# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

**BONIFACIO ABAD,**

    **Plaintiff,**

v.   Case No. _____

**THE UNITED STATES OF AMERICA,**

    **Defendant.**

## COMPLAINT FOR MEDICAL NEGLIGENCE AND NEGLIGENT HIRING, TRAINING, SUPERVISION, AND IMPLEMENTATION OF POLICIES

Plaintiff Bonifacio Abad, by and through his counsel of record at Atkins & Walker Law, states the following as his complaint:

## JURISDICTION AND VENUE

1. Plaintiff Bonifacio Abad is a resident of Rio Rancho, New Mexico.

2. First Choice Community Healthcare, Inc. (hereinafter "First Choice") is a New Mexico corporation.

3. Upon information and belief Richard Aires, M.D. is and was an employee of First Choice who works at First Choice's clinic located at 7704 2nd Street, Albuquerque, NM 87107.

4. Upon information and belief, First Choice and its employees, pursuant to federal law, are entitled to the protections of the Federal Tort Claims Act, making the United States of America the lone proper Defendant in this lawsuit.

5. Plaintiff submitted his administrative claim to the U.S. Department of Health and Human Services on December 9, 2020 via certified mail, and it was received on December 14, 2020.

6. More than six months have passed since the U.S. Department of Health and Human Services received notice of Plaintiff's administrative claim on December 14, 2020; however, to date, Plaintiff has received no response.

7. Because Plaintiff's administrative claim has been constructively denied, he has sufficiently exhausted his administrative remedies and may now file this lawsuit.

8. The events giving rise to this controversy occurred in Albuquerque, New Mexico.

9. This Court has subject matter jurisdiction and personal jurisdiction over this matter under the Federal Tort Claims Act.

10. Venue is proper in this Court.

## FACTUAL BACKGROUND

11. When a primary care physician is treating a male patient for a urinary condition, the physician must always consider the possibility that the patient has prostate cancer.

12. The only way to determine if a patient has prostate cancer is via prostate cancer screening.

13. Prostate cancer screening includes two major components: a prostate-specific antigen ("PSA") blood test and a digital rectal examination ("DRE").

14. When a primary care physician is treating a male patient for a urinary condition, the primary care physician must always offer the patient screening for prostate cancer.

15. The primary care physician must explain the pros and cons of prostate cancer screening and allow the patient to make an informed decision about whether to undergo the screening or to opt not to do so.

16. The purpose of prostate cancer screening is to detect the presence of prostate cancer and, if it is found, to begin treatment as soon as possible.

17. The longer a patient's prostate cancer goes undetected, the worse the prognosis is for the patient.

18. In October 2017 Plaintiff was a patient at First Choice, and his primary care physician was Richard Aires, M.D.

19. In October 2017, Plaintiff began having difficulty urinating, reporting that he was unable to start urinating in the morning with ease and then experienced a frequent need to urinate throughout the day.

20. On October 25, 2017, Dr. Aires diagnosed Plaintiff with benign prostatic hyperplasia ("BPH").

21. From November 22, 2017 through December 18, 2018, Dr. Aires followed Plaintiff's urinary symptoms and treated Plaintiff for BPH.

22. Though Plaintiff's urinary symptoms continued between November 22, 2017 and December 18, 2018, at no time did Dr. Aires:

　　a. Discuss the pros and cons of ordering a PSA blood test for Plaintiff;

　　b. Order a PSA blood test for Plaintiff;

　　c. Discuss the pros and cons of performing a DRE on Plaintiff; or

　　d. Perform a DRE on Plaintiff.

23. After his December 18, 2018 visit with Dr. Aires, Plaintiff decided to switch to a new primary care provider who is not affiliated with First Choice.

24. On July 21, 2020, the results of a PSA blood test ordered by Plaintiff's new, non-First Choice primary care provider came back at >2000.00 ng/ml (the reference range for PSA is 0.00-4.00 ng/ml).

25.	Plaintiff was hospitalized on August 23, 2020, and CT imaging revealed what appeared to be metastatic cancer.

26.	An August 27, 2020 bone biopsy revealed that Plaintiff was suffering from "metastatic adenocarcinoma, consistent with prostatic primary."

27.	Plaintiff subsequently established care with an oncologist, who offered to put him on palliative care.

28.	Plaintiff expects to die from his metastatic prostate cancer.

## COUNT 1:  MEDICAL NEGLIGENCE

All previous paragraphs are incorporated herein by reference.

29.	The medical staff at First Choice, including Dr. Aires, was under the duty to possess and apply the knowledge and to use the skill ordinarily used by reasonably well-qualified medical professionals under similar circumstances when providing medical care to Plaintiff.

30.	The medical staff at First Choice, including Dr. Aires, negligently failed to provide Plaintiff with adequate medical care by committing acts and omissions that include, but are not limited to, the following:

    a. Failing to discuss the pros and cons of ordering a PSA blood test for Plaintiff;

    b. Failing to order a PSA blood test for Plaintiff;

    c. Failing to discuss the pros and cons of performing a DRE on Plaintiff; and

    d. Failing to perform a DRE on Plaintiff.

31.	The wrongful conduct of the medical staff at First Choice, including Dr. Aires, was a cause of the significant delay in diagnosing Plaintiff's prostate cancer.

32.	The significant delay in screening Plaintiff for prostate cancer delayed his

ultimate diagnosis, which has gravely affected his prognosis.

33. Had Plaintiff's prostate cancer been detected by Dr. Aires, or another practitioner at First Choice, in 2017 or 2018, his prognosis would have been better.

34. At all times pertinent hereto, the medical staff at First Choice, including Dr. Aires, who were responsible for Plaintiff's medical care were the employees, agents, or apparent agents of First Choice and may be held liable for all their acts and omissions pursuant to the doctrines of *respondeat superior*, agency, or apparent agency.

35. Plaintiff has suffered the following recoverable damages as a result of the acts and omissions of the medical staff at First Choice, including Dr. Aires, who were responsible for Plaintiff's medical care: lost value of life, lost enjoyment of life, pain and suffering, emotional distress, past and future medical expenses, and lost household services.

## COUNT 2: NEGLIGENT HIRING, TRAINING, SUPERVISION, AND IMPLEMENTATION OF POLICIES

All previous paragraphs are incorporated herein by reference.

36. First Choice, through its employees, agents, or apparent agents was required to use the ordinary care of a reasonably prudent medical facility in hiring, training, and supervising its employees, as well as having policies and procedures in place to ensure that its employees, agents, or apparent agents did not violate the standard of care in providing medical services.

37. First Choice, through its employees, agents, or apparent agents negligently did not use the ordinary care of a reasonably prudent entity by committing one or more of the following acts or omissions:

      a. Not adequately investigating the qualifications, training, and background of its personnel providing medical services to patients;

b. Not training its employees, agents, or apparent agents regarding how to safely provide medical services to patients;

c. Not providing the appropriate amount of supervision to its personnel providing medical services to patients; or

d. Not implementing policies and procedures to adequately protect the safety of patients.

38. First Choice may be held responsible for its own negligence, as well as the acts and omissions of its employees, agents, or apparent agents pursuant to the doctrines of *respondeat superior*, agency, or apparent agency.

39. The negligent acts and omissions related to hiring, training, and supervising medical personnel, as well as in not implementing adequate policies and procedures to protect the safety of patients, was a cause of the significant delay in diagnosing Plaintiff's prostate cancer that resulted in the recoverable damages set out in paragraph 35.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Bonifacio Abad requests that a judgment be entered in his favor against Defendant for all damages allowed under the law, and for such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Tyler J. Atkins*
Tyler J. Atkins
Samuel H. Walker
Atkins & Walker Law
127 Bryn Mawr Drive SE
Albuquerque, NM 87106
t/ (505) 508-4640
f/ (505) 672-5119
e/ tyler@atkinswalker.com
*Attorneys for Plaintiff Bonifacio Abad*